**Electronically Filed
Intermediate Court of Appeals
30432
30-DEC-2013
12:30 PM**

NO. 30432

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


KENNETH L. WALLACE, Trustee of the Kenneth L. Wallace
Living Trust Dated June 20, 2001, Plaintiff-Appellant,
v.
HARLOW BURROWS, Defendant/Cross-claimant/
Cross-claim Defendant-Appellee,
and
LA BAHIA, 1993, INC., a Hawaii corporation,
Defendant/Cross-claim Defendant-Appellee,
and
SCOTT DEAN, ROBERT J. CELLA, CBIP, INC., dba COLDWELL
BANKER ISLAND PROPERTIES, Defendant/Cross-claim Defendant/
Cross-claimant-Appellee,
and
JOHN DOES 1-20 and JANE DOES 1-20, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 05-1-0141)


SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., Reifurth and Ginoza, JJ.)

This appeal arises from a contract for the sale and
purchase of a home in Wailea, Maui (the "Home," or the
"Property"), entered into between Defendant-Appellee La Bahia
1993, Inc. ("La Bahia") as seller and Plaintiff-Appellant Kenneth
L. Wallace, Trustee of the Kenneth L. Wallace Living Trust Dated
June 20, 2001 ("Wallace") as buyer, on December 15, 2004.
Defendant-Appellee Harlow Burrows ("Burrows") is the sole officer
and director of La Bahia. Defendant-Appellee CBIP, Inc., dba
Coldwell Banker Island Properties ("Coldwell Banker") entered
into a dual agency agreement with Wallace and Burrows. In the
Coldwell Banker Dual Agency Consent Agreement, under which

Coldwell Banker represented both parties in the transaction, Defendant-Appellee Scott Dean ("Dean") and Peter Gelsey ("Gelsey") were identified as the listing agent and selling agent respectively, and Defendant-Appellee Robert J. Cella ("Cella") was identified as the seller's broker-in-charge.[1]

Wallace appeals from the May 12, 2008 order denying his motion for partial summary judgment ("Order Denying MPSJ"); the November 18, 2009 Findings of Fact, Conclusions of Law, and Order; the March 9, 2010 Final Judgment; and the March 23, 2010 final judgment in favor of Burrows and La Bahia, each entered in the Circuit Court of the Second Circuit ("Circuit Court").[2]

Wallace raises five points of error on appeal. He contends that the Circuit Court erred in (1) denying his Motion for Partial Summary Judgment; (2) entering inadequate findings of fact ("FOF"); (3) entering clearly erroneous FOF and wrong conclusions of law ("COL"); (4) limiting cross-examination of defense witness James Worley; and (5) awarding attorneys' fees to Burrows without apportionment.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Wallace's points of error as follows:

(1) Under the "*Morgan* rule," see *Morgan v. Am. Univ.*, 534 A.2d 323 (D.C. 1987), "an order denying [a] motion [for summary judgment] could not be appealed if denial was based on the presence of factual questions for the jury, but could be appealed if based on questions of law." *Larsen v. Pacesetter Systems, Inc.*, 74 Haw. 1, 17-18, 837 P.2d 1273, 1282 (1992). Attempting to distinguish *Morgan*, Wallace contends that the Order Denying MPSJ "was based on legal error, and not 'on the presence of factual issues.'" Wallace further claims that "the trial court denied summary judgment based on the mistaken assumption

---

[1]  Although Gelsey was identified as the "selling agent" in the Dual Agency Consent Agreement, Gelsey, in fact, served as Wallace's principal Coldwell Banker contact and was not named as a defendant in the complaint. As such, Coldwell Banker, Dean, and Cella are referred to, collectively, as "Defendant Realtors."

[2]  The Honorable Joseph E. Cardoza presided.

that Wallace must show an intentional failure to disclose prior repairs or defects in order [for Defendants-Appellees] to be found liable for breach of contract."

The Order Denying MPSJ, however, expressly states that it is based on disputed issues of material fact. Indeed, the hearing transcript illuminates the court's thinking.

At the hearing, the Circuit Court identified two issues raised by Wallace's motion: (i) whether the Deposit Receipt Offer and Acceptance ("DROA")[3] and Hawaii Revised Statutes chapter 508D ("Chapter 508D") required the seller to disclose all material facts concerning the Property; and (ii) whether the seller failed to disclose material facts to the buyer. As to the first issue, the court concluded, as a matter of law, that the seller was under an obligation to disclose all material facts concerning the Property under the DROA and Chapter 508D. As to the second issue, the court explained:

> However, with respect to the second portion of this motion, that is that the seller failed to disclose material facts to the buyer, including repairs to the roof of the residence on the subject property, and repairs to the interior of the property, the Court has determined that *there are genuine issues of material fact* that would prevent this Court from entering judgment as a matter of law in this summary fashion.

Although the Circuit Court did not elaborate further on the genuine issues of material fact, the transcript makes it clear that the court was referring to unresolved questions regarding whether Burrows actually disclosed material past defects. Here, as in *Bhakta v. Cnty. of Maui*, 109 Hawai'i 198, 124 P.3d 943 (2005), the Circuit Court separated out the issues in the motion into issues of law and issues of fact, and denied the motion based on the latter. *Cf. Gump v. Walmart Stores, Inc.*, 93 Hawai'i 428, 437-38, 5 P.3d 418, 427-28 (App. 1999), *aff'd in part, rev'd in part sub nom. Gump v. Wal-Mart Stores, Inc.*, 93 Hawai'i 417, 5 P.3d 407 (2000) (allowing review on appeal because the trial court denied the motion for summary judgment based on an issue of law). Therefore, the *Morgan* rule

---

[3] The DROA was submitted by Wallace to Burrows on October 21, 2004. On October 22, 2004, Wallace submitted a Counter Offer ("Counter Offer"), which Burrows accepted on October 24, 2004, by signing and dating the DROA, completing section D of the DROA, and attaching the Counter Offer.

applies, and the Order Denying MPSJ is not reviewable by this court.

(2) Wallace argues that the Circuit Court failed to enter findings sufficient to explain its ultimate conclusions or to address almost a dozen critical facts allegedly established by the evidence.[4]

> Where an appellant alleges that the trial court failed to make adequate findings of fact, the appellate court will examine all the findings, as made, to determine whether they are (1) supported by the evidence; and (2) sufficiently comprehensive and pertinent to the issues in the case to form a basis for the conclusions of law. If those findings include sufficient subsidiary facts to disclose to the reviewing court the steps by which the lower court reached its ultimate conclusion on each factual issue, then the findings are adequate.

*Nani Koolau Co. v. K & M Const., Inc.*, 5 Haw. App. 137, 140, 681 P.2d 580, 584 (1984) (citations omitted); *see also Shannon v. Murphy*, 49 Haw. 661, 668-69, 426 P.2d 816, 820 (1967) (holding that succinct FOFs were sufficient to determine the issues at hand, where the detailed FOFs that plaintiff desired were "either dependent upon the credibility of plaintiff or were immaterial and unnecessary for the determination of the issues before the court"). We address Wallace's contentions in turn.

Wallace asserts that FOFs 18-31 are inadequate because the omission of portions of John Eddy's testimony "sanitizes the leak history." Eddy's testimony, however, is adequately reflected in FOFs 20-21.

Wallace contends that the Circuit Court made no finding regarding (a) the Counter Offer, or (b) the allegedly false language in the Counter Offer representing to Wallace that there was another offer for the Property. FOF 38, however, explicitly addresses the Counter Offer and has sufficient support in the testimony of Wallace and Burrows and the DROA and Counter Offer themselves. In addition, Wallace fails to establish, in light of

---

[4] Wallace also finds it "troubling" that the Circuit Court allegedly entered "scripted findings nine months after the close of evidence in the case"; he cites to *In re Colony Square Co.*, 819 F.2d 272 (11th Cir. 1987) and *Bradley v. Md. Cas. Co.*, 382 F.2d 415 (8th Cir. 1967), asserting that "[n]umerous jurisdictions 'have repeatedly condemned the ghostwriting of judicial orders by litigants.'" These cases, however, are inapposite. Wallace points to nothing in the record showing that the Circuit Court's process was fundamentally unfair or denied him due process. Thus, Wallace has not demonstrated that the Circuit Court erred.

Burrows's ambiguous testimony, that another offer did not exist, or that a finding relating to the allegedly false contention is necessary in order to explain the Circuit Court's ultimate conclusion.

Wallace claims that the FOFs inadequately describe the October 16, 2004 Home Inspection Report ("HIR"), because there were:

> [N]o findings regarding the undisputed testimony and evidence that the [HIR] recommended obtaining the history of roof and lanai repairs from Burrows and a complete roof evaluation, that Burrows and Dean were aware of those recommendations, that Burrows and Dean saw the Rainbow Roof Repair Agreement that did not include a complete roof evaluation, and that Wallace did not see the Repair Agreement before the transaction closed.

While the FOFs do not mention the HIR's recommendation for a complete roof evaluation, they describe the extensive nature of the HIR and the fact that, less than three weeks later, Wallace signed the Addendum to the DROA ("Addendum") on November 6, 2004, effectively waiving his right to withdraw from the sale based on either the HIR or the October 29, 2004 Disclosure Statement ("Disclosure Statement") despite the fact that the Disclosure Statement did not address all the items mentioned in the HIR.[5/] The FOFs adequately describe that Wallace received the HIR, arranged for contractors to fix the most critical issues, signed the Addendum, and removed the Buyer's contingencies without following up on referenced documents that would have further clarified the nature of the repairs.

Wallace maintains that the Circuit Court's FOFs were inadequate because "[t]he court made no findings on Burrows's attempt to repair the roof of a multimillion dollar home with 'no building skills.'" FOFs 23-26, however, were sufficient for the Circuit Court to conclude that Burrows believed that the problems with the roof had been resolved when he completed the Disclosure Statement.

Wallace argues that the FOFs were inadequate because they ignored Gelsey's "representations to Wallace that all critical issues in the [HIR] were being resolved . . . [i]n other

---

[5/]    Wallace signed a Contingency Removal Certification Form on December 7, 2004.

words, Wallace had no reason to walk away from the transaction."
FOF 86, however, explains that Wallace initially wanted all the
items in the HIR to be covered, but the Addendum that Wallace
subsequently signed did not address all of those items. Wallace
testified that the items listed in the Addendum were "important,"
that the Addendum did not contain all the items in the HIR, and
that minor issues need not be included in the document.

Wallace asserts that the FOFs are inadequate because
the Circuit Court "ignored Gelsey's testimony that he believed
and represented to Wallace that the lanai repair was cosmetic."
Wallace, however, viewed the damage differently. FOFs 95-97
specifically outline Wallace's pre-closing encounters with lanai-
related problems, and how he and others viewed the lanai repair.

Wallace contends that the Circuit Court "failed to make
findings on the candid admission by Gelsey that he failed to
provide Burrows's handwritten disclosure to Wallace, and that he
had [an] obligation to do so." FOFs 77-80, however, provide a
sufficient basis for COL 20: "[a] seller's agent's duty [to
disclose] is limited to where an agent has actual knowledge that
the seller's disclosure is inaccurate or the seller has omitted
material defects." The FOFs explain that Burrows disclosed the
information to Dean, that Dean forwarded the information to
Gelsey in a fax, and that Gelsey later informed Wallace of the
information contained in Dean's fax.

Wallace claims that the FOFs are inadequate because
when the contingency period ended on December 7, 2004, "Gelsey
believed that all critical items had been resolved, with the
exception of the 'cosmetic' lanai repair, which would be
completed shortly after closing[,]" and sent an email to Wallace.
According to Wallace, this email "assured [him] that everything
was fine and gave him no reason to walk away." Irrespective of
what Gelsey thought, however, Wallace observed the problem
himself. FOFs 100-102 describe Wallace's awareness of the lanai
problem and its importance relative to other concerns regarding
the sale, particularly Wallace's concern over the completion of

his section 1031 transaction.[6]

Wallace maintains that the Circuit Court's FOFs were inadequate because they did not incorporate the testimony of several witnesses, including James Reinhardt ("Reinhardt"), Shawn Conners ("Conners"),[7] Kenneth Chong ("Chong"), and James Worley ("Worley"). The relevance of that testimony notwithstanding,

> where the trial court's determinations of fact are largely dependent upon the resolution of conflicting testimony, great weight will be accorded its findings upon review. And while reasonable minds may fairly differ as to whether certain evidence establishes a fact in issue, yet where findings of fact are supported by substantial evidence the findings of the trial court will be sustained. Substantial evidence is credible evidence which is of sufficient quantity and probative value to justify a reasonable man in reaching a conclusion.

*Shinn v. Edwin Yee, Ltd.*, 57 Haw. 215, 219, 553 P.2d 733, 737 (1976) (citations omitted). The Circuit Court's FOFs are adequate without the testimony of Reinhardt, Chong, or Worley because they are sufficiently comprehensive and pertinent to the issues to form a basis for the COLs. That one witness's testimony contradicts another's does not mean that the Circuit Court abuses its discretion in failing to reference each witness's testimony or finding one witness's testimony more credible.

In sum, the findings, as made, were supported by the evidence and were sufficiently comprehensive and pertinent to the issues in the case to form a basis for the conclusions of law.

(3) Wallace asserts that a number of FOFs are clearly erroneous and certain COLs are wrong.

(a) The challenged FOFs are erroneous, Wallace claims, because they are "against the clear weight of the

---

[6] Section C-67 of the DROA described "Other Special Terms," specifically those regarding an Internal Revenue Code section 1031 exchange ("1031 Exchange") transaction: "Seller agrees to participate in Buyer's 1031 exchange at no additional cost or obligation to seller, and completion of this transaction is subject to completion of the corresponding 1031 transaction(s) of Buyer." FOF 101, the substance of which Wallace does not challenge, finds that Wallace believed that he would be faced with 1031 Exchange tax implications of $600,000 if he pulled out of the sale.

[7] Wallace fails to direct us to Conners's testimony in the record; thus, any argument relating to that testimony is waived. *See* Haw. R. App. P. 28(b)(7) (arguments must contain "citations to the authorities, statutes and parts of the record relied on . . . . Points not argued may be deemed waived").

evidence or otherwise indicate a clear mistake has been made."

> An [FOF] is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed. An [FOF] is also clearly erroneous when the record lacks substantial evidence to support the finding. We have defined substantial evidence as credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*Bremer v. Weeks,* 104 Hawai'i 43, 51, 85 P.3d 150, 158 (2004) (quoting *Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co.,* 100 Hawai'i 97, 112, 58 P.3d 608, 623 (2002)).

Wallace contends that numerous FOFs, including FOF 38, 53, 55, 59, 60, 63-68, 70,[8/] 74, 77-80, 84-86, 99-102, and 122, are erroneous because they are false, impossible, misleading or incomplete. Each of those findings, however, is supported by substantial evidence, and fails to leave us with the definite and firm conviction that a mistake has been committed. For instance, the failure to make any reference to Burrows's Counter Offer to Wallace or the allegedly "false language" in the Counter Offer regarding Burrows's receipt of another offer on the Home (FOF 38) is significant only if we accept Wallace's characterization of the false language. Rather than "false," Burrows's testimony was equivocal, and therefore the Circuit Court's disregard of it is not clearly erroneous. Similarly, FOFs 59 and 60 are not clearly erroneous merely because they fail to mention that Gelsey twice informed Wallace that the critical items in the HIR were being resolved. FOF 86, which is unchallenged, outlines that Wallace initially wanted each item in the HIR to be resolved, but later agreed with Gelsey to repair the most critical issues, and signed a subsequent Addendum that listed only four items to be repaired. FOFs 59 and 60, together with FOF 86, form a sufficient basis for the related COLs.

---

[8/]     Wallace contends that the Circuit Court's "use of intent regarding Burrows's contractual obligation to 'disclose all material facts relating to the Property that . . . are within the knowledge or control of Seller' is reversible legal error." The "use of intent" which Wallace refers to is contained in FOF 70, which does not limit itself to Wallace's contract claim. Furthermore, the court's COLs regarding breach of contract do not mention intent. Since Wallace does not demonstrate an improper "use of intent" in any of the contract-based COLs, the claim is without merit.

The Circuit Court found various witnesses to be more credible than other witnesses, observed that answers were qualified where Wallace saw unambiguity, employed adjectives with which Wallace disagreed or failed to employ adjectives that he preferred, and interpreted counter-evidence differently than Wallace. It thus reached different conclusions than Wallace as to the significance of various pieces of evidence, facts, and arguments as they related to the ultimate conclusions in the case. None of this makes the predicate FOFs clearly erroneous.

(b) Wallace next argues that numerous COLs concerning his breach of contract, negligence, unfair/deceptive acts, and vicarious liability claims are wrong.[9] We address those arguments in turn.

> [The appellate] court reviews the trial court's COLs *de novo*. A COL is not binding upon an appellate court and is freely reviewable for its correctness. Moreover, a COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned.

*Bhakta*, 109 Hawai'i at 208, 124 P.3d at 953 (brackets in original, citations, and internal quotation marks omitted).

Wallace asserts that COLs 15, 18, 25, and 40, regarding his breach of contract claim, are wrong[10] because Burrows (i) falsely reported the roof's repair history, and (ii) failed to prepare the Disclosure Statement with due care because he did not disclose repairs done, initially, by some unknown person and, subsequently, by Burrows on the ceiling and roof.[11] Burrows,

---

[9] In his opening brief, Wallace challenged various COL related to claims against the Defendant Realtors, including COLs 20, 41-45, 49, and 51. Wallace, however, subsequently dismissed his appeal as to the Defendant Realtors. Consequently, we deem those arguments to be withdrawn and do not address them.

[10] Wallace summarily contends that there is a common law duty for sellers and real estate agents to make full disclosure, citing *Holmes v. Summer*, 116 Cal. Rptr. 3d 419, 424 (App. 2010). Since *Holmes* purports only to reflect California law, and since Wallace offers no argument tying California common law to Hawai'i, or explaining how any of the identified COLs amount to a breach of that common law, we reject the argument as unsupported by relevant authority and unconvincing.

[11] Wallace notes that Burrows knew that the HIR asked for history of repairs and recommended a complete roof evaluation, that Burrows agreed to perform the repairs in the Addendum in accordance with the HIR, and yet "he and his dual agent Dean approved the Repair Agreement knowing that it did not include the evaluation." That claim, however, ignores the intimate involvement of Gelsey in the discussions about which repairs would be made,

however, checked the boxes marked Ceilings and Roof under the question: "Are you aware of any current or past defects/malfunctions/major repairs with respect to" on page one of the Disclosure Statement. On page two, Burrows explained, with respect to the aforementioned check marks: "Had roof problems. Fixed by Ram Roofing. (See John Eddy)."

Wallace, nevertheless, objects that Burrows did not disclose that Burrows was aware that there were multiple instances of roof repair and that Burrows and some unknown person had attempted repairs before Ram Roofing was involved. Burrows responded that he was in no rush to sell the Home, that he prepared the Disclosure Statement in good faith and to the best of his knowledge, that he explained the roof repair issue in further detail to Dean, that he did not know who or why someone had performed repair work in the upper front area of the roof, and that, because "I'm [only] supposed to report significant material things known to me," he did not report about anything which he "really [did not] have any knowledge [about] or history on []." As to not reporting that he had participated in any repair, Burrows explained that he worked alongside John Eddy. He further explained that "Ram Roofing came along, and so that's three people working up there, but it's not three repairs. It's one leak and still one incident." Based on the record, the Disclosure Statement was prepared with "due care" in accordance with HRS § 508D-9.

In sum, the challenged COLs are supported by the Circuit Court's FOFs and reflect the correct rule of law. Therefore, they will not be overturned.

(4) Wallace contends that the Circuit Court erred by excluding a "critical admission of liability by Defendant's expert Worley," when it barred both his opinion and the expert's notes reflecting it. Wallace points to testimony by Worley regarding notes he took while observing standard-of-care expert Kenneth Chong's deposition, in which Worley stated that "there

---

and the fact that, as Wallace argues elsewhere, Gelsey twice informed him that the critical items in the Report were being resolved. Wallace's objection, then, is with Gelsey, against whom he made no complaint, and not Burrows.

may have been a failure to [protect] buyer's interest at the time of closing regarding repairs and concerns." Wallace asserts that the court should have followed Hawai'i Rules of Evidence ("HRE") Rule 702.1.[12]/

In accordance with HRE Rule 703, the Circuit Court allowed cross-examination of Worley on his notes, in order to understand the basis of the expert's opinion. Once the cross-examination revealed that the notes did not reflect Worley's final opinions, the Circuit Court properly limited the cross-examination. *Tabieros v. Clark Equip. Co.*, 85 Hawai'i 336, 383-84, 944 P.2d 1279, 1326-27 (1997). Thus, the Circuit Court did not abuse its discretion in its treatment of Exhibit 128 and Worley's testimony.

(5) Wallace argues that the Circuit Court erred by declining to apportion attorneys' fees between his assumpsit and non-assumpsit claims. We disagree.

> In deciding whether to award fees under HRS § 607-14, the court must determine the nature of the lawsuit where both assumpsit and non-assumpsit claims are asserted in an action.
>
> . . . The character of the action should be determined from the facts and issues raised in the complaint, the nature of the entire grievance, and the relief sought. . . . Additionally, . . . in a case involving both assumpsit and non-assumpsit claims, a court must base its award of fees, *if practicable*, on an apportionment of the fees claimed between assumpsit and non-assumpsit claims.

*Blair v. Ing*, 96 Hawai'i 327, 332, 31 P.3d 184, 189 (2001) (citations and internal quotation marks omitted).

The Circuit Court did not err in determining the essential character of the case to be in assumpsit. In the caption of his First Amended Complaint, Wallace characterized the action as a breach of contract, his first claim alleges that

---

[12]/ HRE Rule 702.1 provides, in relevant part:

(a) General. A witness testifying as an expert may be cross-examined to the same extent as any other witness and, in addition, may be cross-examined as to (1) the witness' qualifications, (2) the subject to which the witness' expert testimony relates, and (3) the matter upon which the witness' opinion is based and the reasons for the witness' opinion.

Haw. R. Evid. 702.1(a) (1993).

Defendants "breached their respective contractual obligations to Plaintiff," and he sought damages. That Wallace sought attorneys' fees is also significant. *See Leslie v. Estate of Tavares*, 93 Hawai'i 1, 6, 994 P.2d 1047, 1052 (2000) ("[A] plaintiff's prayer for attorney fees is a significant indication that the action is in assumpsit." (citing *Helfand v. Gerson*, 105 F.3d 530, 537 (9th Cir. 1997))). Moreover, the Circuit Court observed that the entire case "flow[ed] from the contractual agreements between the parties[.]" The Circuit Court, looking at the entire grievance, correctly determined that the "character of the action" was in assumpsit. *See Blair*, 92 Hawai'i at 332, 31 P.3d at 189.

Nor did the Circuit Court err in declining to apportion fees between claims. Wallace predicated his fraud and misrepresentation claim on a breach of contract, alleging that Burrows and Defendant Realtors made false representations in the Addendum and the Disclosure Statement. Wallace's negligence claim, alleging breach of duty related to disclosures in the DROA and Counter Offer, also derived from the breach of contract claim. As Wallace's additional claims derived from, and indeed, were "inextricably linked" to, the breach of contract claim, the Circuit Court did not abuse its discretion in declining to apportion attorneys' fees. *See id.* at 333, 31 P.3d at 190 ("Because the negligence claim . . . was derived from the alleged implied contract and was inextricably linked to the implied contract claim by virtue of the malpractice suit, we hold that it is impracticable, if not impossible, to apportion the fees between the assumpsit and non-assumpsit claims.").

Therefore, IT IS HEREBY ORDERED that the May 12, 2008 Order Denying Plaintiff Kenneth L. Wallace's Motion for Partial Summary Judgment on Count I of the First Amended Complaint Against Defendants Harlow Burrows and La Bahia 1993, Inc.; the November 18, 2009 Findings of Fact, Conclusions of Law, and Order; the March 9, 2010 Final Judgment; and the March 23, 2010 Final Judgment in Favor of Defendants Harlow Burrows and La Bahia 1993, Inc. Against Plaintiff Kenneth L. Wallace, Trustee of the

12

Kenneth L. Wallace Living Trust Dated June 20, 2001, entered in the Circuit Court of the Second Circuit, are affirmed.

DATED:  Honolulu, Hawaiʻi, December 30, 2013.

On the briefs:

Michael L. Lam and
Mark G. Valencia
(Case Lombardi & Pettit)
and Peter Van Name Esser
(with them on the reply)
for Plaintiff-Appellant.

Craig G. Nakamura and
Erika L. Lewis
(Carlsmith Ball LLP)
for Defendant/Cross-claim
Defendant/Cross-claimant-
Appellee Harlow Burrows and
Defendant/Cross-claim
Defendant-Appellee
La Bahia, 1993, Inc.

Chief Judge

Associate Judge

Associate Judge

13